# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES NASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-239-JHP-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Charles Nash requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born October 6, 1951, and was fifty-nine years old at the time of the most recent administrative hearing. (Tr. 62, 813). He graduated high school; finished six months of welding training; and has worked as a pre-cast molder, cashier, security guard, and oil well cementer. (Tr. 628, 825). The claimant alleges inability to work since March 2, 2005 due to COPD, emphysema, and depression. (Tr. 623).

### Procedural History

On June 6, 2003, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, later amended so that it was for a period of disability beginning March 2, 2005. His application was denied. ALJ Michael Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 25, 2007. (Tr. 19-30). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-09-201-SPS and remanded the case for further proceedings. In the meantime, the claimant filed another application for disability insurance benefits under Title II of the Social Security Act, and ALJ Osly F. Deramus ultimately found the claimant disabled beginning October 26, 2007. (Tr. 482-486). The Appeals Council then remanded the case to the ALJ for a determination of whether the claimant was disabled prior to October 26, 2007. (Tr. 502). ALJ Kirkpatrick held another administrative hearing and determined in a written opinion dated May 5, 2011, that the claimant was not disabled from March 2,

2005 through October 26, 2007. (Tr. 463-476). The Appeals Council then denied review, and the ALJ's May 2011 written opinion became the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that, from March 2, 2005 through October 26, 2007, the claimant retained the residual functional capacity (RFC) to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c), except he was to avoid respiratory irritants. Due to the claimant's psychological pathology, the ALJ further found that the claimant could not perform detailed or complex tasks, and/or work that required interaction with the general public. (Tr. 466). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, laundry worker, poultry processor, or dining room attendant. (Tr. 474-475).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence, particularly that of treating physicians Wellington G. Robbins and Shivanna Kumar; (ii) by improperly assessing his credibility; and (iii) by failing to properly assess his RFC. Because the ALJ *did* improperly assess the claimant's credibility, the decision of the Commissioner should be reversed.

The medical evidence reveals that the claimant had the severe impairments of chronic obstructive pulmonary disease (COPD) and depression. (Tr. 465). He was

-4-

largely treated by the Veteran's Administration, and notes indicate he was treated with medications for wheezing at least as far back as 2003, and that even with treatment he had "very little exercise tolerance." (Tr. 147, 150, 158). In December 2003, a consultative examiner assessed the claimant with COPD of moderate severity clinically, chronic knee pain, and gastroesophageal reflux disease. (Tr. 134). VA Notes indicated that the claimant had decreased his smoking to a half a pack a day in 2004, and that the claimant stopped smoking in June 2005, but other notes indicate that he may have quit earlier. (Tr. 161, 169, 330, 367, 369). In an April 7, 2005 letter, VA physician Dr. Wellington G. Robbins indicated that he supported the claimant's application for disability benefits, that the claimant was "most impaired by the chronic lung disease and the associated wheeze and dyspnea with activity," and that even on "medical management" the claimant "continue[d] to be severely symptomatic and limited[.]" (Tr. 366). On December 12, 2005, Dr. Robbins completed a Medical Source Opinion of RFC, stating that the claimant could occasionally stand and infrequently walk, due to severe chronic obstructive lung disease with marked decreased exercise tolerance. (Tr. 315). Dr. Robbins completed the same form on October 31, 2006, stating that the claimant could occasionally stand and walk, due to his stable COPD. (Tr. 314). The claimant's psychiatrist Dr. Shivanna Kumar also completed a similar form, stating that the claimant could infrequently stand/walk, and that he had impaired concentration due to pain, medication, and fatigue. (Tr. 321). Dr. Kumar attributed these limitations to the claimant's history of COPD, emphysema, and asthma, as well as depression related to his medical condition. (Tr. 321). In April 2007, the claimant reported being off his

medications for a month and complained of cough and shortness of breath, so his medications were restarted. (Tr. 674-677). That same month, VA notes indicate that the claimant had successfully stopped smoking for 25 months or more, and that tobacco counseling was therefore being suspended. (Tr. 680). A VA note from October 2007 indicates that the claimant had been cooking for he and his wife because she had surgery. (Tr. 670). On September 6, 2008, the claimant presented to the McAlester Regional Health Center emergency room for shortness of breath and wheezing that had not resolved with the use of albuterol. (Tr. 729). A September 9, 2008 note states that the claimant had "Quit using tobacco <7 years ago . . . Stopped: July, 2008 . . . [h]as quit smoking two months ago." (Tr. 776-777).

At the March 31, 2011 administrative hearing, the claimant testified that he can no longer work because his breathing problems were so extreme that he would get out of breath just by walking thirty feet to his mailbox, which would cause him to have to use his home oxygen machine when he returned. (Tr. 817-818). The claimant also testified that he experienced problems with coughing when he would get short of breath, and that he used a nebulizer ten to twelve times a day. (Tr. 818-819). When asked what would exacerbate his breathing problems, the claimant responded that exertion, pollen, and excessive heat would all make his symptoms worse. (Tr. 820). The claimant also testified that he had quit smoking five to seven years previously. (Tr. 821).

In his written decision, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. (Tr. 467-468). As to the claimant's mental impairments, the ALJ agreed with the state reviewing physicians who found that the claimant did not

have a disabling mental impairment as long as he was limited to simple tasks that did not require contact with the public. (Tr. 469). The ALJ found that the claimant was treated for lung problems and a reported diagnosis of COPD, and that the claimant had been advised to stop smoking but had not done so. (Tr. 469-470). Although noting that his credibility findings were based on evidence in the record rather than the claimant's failure to pursue any treatment, the ALJ noted that the claimant received little treatment other than medication prescriptions during the relevant period. (Tr. 472). The ALJ also noted that the claimant complained of a disabling respiratory impairment, but that he had continued to smoke during that time and that pulmonary function studies showed only a mild obstruction. (Tr. 472). The ALJ stated that the claimant admitted at an August 8, 2007 administrative hearing that he had exaggerated his respiratory limitations when he wrote that he did not visit friends because he did not have the breath. (Tr. 473). The ALJ then stated that "[t]here is little reason to accept the claimant's self-servicing testimony about disabling pain/functional limitations. Claimant's pain complaints are discordant with his actual medical findings." (Tr. 473). The ALJ then stated that "chronic pain" was usually characterized by "observable manifestations such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscular spasms, the use of assistive devices, prolonged bed rest, or adverse neurologic signs," but the ALJ found that none of those signed existed in this case. (Tr. 473). The ALJ acknowledged the claimant's VA disability rating, but found that the VA medical records "d[id] not come close to supporting a finding of disability that began on or before July 26, 2007." (Tr. 474). The ALJ then found that the state reviewing physicians' opinions

were supported by the evidence of record, that the claimant was not credible, and that the claimant was therefore not precluded from performing medium work. (Tr. 474).

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *See Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4.

The specific reasons given by the ALJ for finding that the claimant's subjective complaints were not credible are not entirely supported by the record. For example, the ALJ stated in his written opinion that the claimant had "admitted that he had exaggerated his respiratory limitations" at his 2007 administration hearing. (Tr. 473). At that hearing, the ALJ pressed the claimant to explain some perceived inconsistencies, including why the claimant had written in his disability report that he was unable to shave, dry his body with a towel, and dress himself, and that he did not visit with people because he would become short of breath. The claimant stated that those circumstances existed around the time he had been in the hospital in 2002, but were not the case at the time of the 2007 hearing. (Tr. 445-446). But instead of noting the claimant's reference to his

hospitalization, the ALJ characterized the claimant's earlier report as an exaggeration. (Tr. 476). Additionally, although records show that the claimant stopped smoking sometime between December 2004 and July 2005, and that he had stopped smoking for at least 25 months in April 2007, the records also indicate that he probably began smoking again by September 2009 (two years past the relevant time period in this case). The ALJ was careful to state that these instances were not cited for failure to follow a prescribed treatment, but rather used them to say that the claimant had been untruthful about this smoking habits and respiratory limitations. (Tr. 473). Last, the ALJ found the claimant was untruthful when he testified at the August 2007 hearing that he cooked very little, *i. e.* eggs or sandwiches, then reported in October 2007 that he had been cooking because his wife had undergone surgery. (Tr. 436, 670, 473). Further examination of these perceived inconsistencies indicate that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not support his conclusions. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Further, the ALJ's credibility analysis preceded the medical evidence and consisted of the following: "After careful consideration of the evidence, I find that

through October 26, 2007 claimant's medically determinable impairments could reasonably be expected to have caused the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 468). The problem with this analysis (apart from vagueness) is that the ALJ should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the above guidelines *and only then* formulated an appropriate RFC, not the other way around, *i. e.,* the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC. *See Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). *See also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

"Because a credibility assessment requires consideration of all the factors in combination, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [the Court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. Dec. 3, 1997) [unpublished opinion] [quotation and citations omitted]. Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility. On remand, the ALJ should properly evaluate the evidence, then re-assess the claimant's credibility. If the ALJ's subsequent credibility analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma